UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KENNETH THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 08 C 3009 |
| | ) | |
| AMERICAN GENERAL FINANCE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM ORDER AND OPINION

MARVIN E. ASPEN, District Judge:

Plaintiff Kenneth Thomas ("Thomas") filed a complaint against Defendant American General Finance, Inc. ("American General"), alleging that American General violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681 *et seq.* (Compl. ¶ 1.) Thomas alleges that American General impermissibly accessed and examined his credit report and information. (*Id*. ¶ 8.) Presently before us is American General's Motion to Compel Arbitration and Stay Proceedings. For the reasons discussed below, we deny the motion.

### BACKGROUND

Thomas alleges that on April 25, 2008, a representative of American General contacted Thomas' home and spoke with his wife, who expressed some interest in loan or credit products. (*Id*. ¶¶ 7-8.) Thomas maintains that he was never personally contacted or solicited regarding any loan or credit products by American General on that date or any date thereafter. (*Id*. ¶ 7.) Thomas alleges that, following the conversation with his wife, American General accessed his credit files and information without his consent or knowledge and without informing him of their activities. (*Id*. ¶ 8.) Thomas had two prior accounts with American General, which were paid of

and closed prior to April 25, 2008. (Resp. at 4.) Thomas and his wife signed a separate loan agreement with an attached arbitration and waiver of jury trial agreement for each prior account. (Mem., Exs. A & B.) Specifically, the parties entered into a loan agreement with an attached arbitration agreement on July 11, 2006 ("July Agreement"). (*Id.*, Ex. A.) The parties entered into a second loan agreement with an attached arbitration agreement on December 14, 2006 ("December Agreement"). (*Id.*, Ex. B.) Here, the July Agreement and the December Agreement are collectively referred to as the "Agreements."

Thomas requests actual, statutory, and punitive damages, as well as reasonable costs and attorney's fees. (Compl. at 3.) Thomas further requests an order directing American General to cease any future access of Thomas' credit report without his permission and to delete all references on reports showing American General's access of his credit information. (*Id.* at 3.) American General now moves to compel arbitration and stay proceedings, including all discovery.

## ANALYSIS

**A.      Federal Arbitration Act**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, governs the application and interpretation of arbitration clauses in commercial contracts for both state and federal courts. *Perry v. Thomas*, 482 U.S. 483, 489, 107 S. Ct. 2520, 2525 (1987); *Jain v. Mere*, 51 F.3d 686, 688 (7th Cir. 1995); *Gen. Elec. Co. v. Guiney Delivery Servs. Inc.*, No. 08 C 1618, 2008 WL 4790391, at *1 (N.D. Ill. Oct. 23, 2008). The FAA provides that "a party aggrieved by the alleged . . . refusal of another to arbitrate under a written agreement for arbitration may petition [a] United States district court . . . for an order directing that such arbitration proceed in the

manner provided for in such agreement." 9 U.S.C. § 4. The FAA directs federal courts to stay legal proceedings when a particular dispute is found to be subject to contractual arbitration. *Id*. § 3.

The FAA reflects a liberal policy in favor of arbitration as a means of settling disputes. *Id*. § 1; *see Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Int'l,* 1 F.3d 639, 641 (7th Cir. 1993). Despite strong federal public policy in favor of arbitration, courts ultimately interpret arbitration agreements based on the intent of the parties. *Am. United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 929 (7th Cir. 2003); *AGCO Corp. v. Anglin*, 216 F.3d 589, 593 (7th Cir. 2000). A court cannot force a party to arbitrate a claim it has not previously agreed to arbitrate. *Kiefer Specialty Flooring, Inc. v. Tarkett*, 174 F.3d 907, 909 (7th Cir. 1999); *Farrand v. Lutheran Bhd.*, 993 F.2d 1253, 1255 (7th Cir. 1993) (citing *AT&T Techs., Inc. v. CWA*, 475 U.S. 643, 649, 106 S. Ct. 1415, 1418 (1986)). A court also may not expand the application of an arbitration clause beyond its intended scope. *Am. United Logistics*, 319 F.3d at 929; *AGCO Corp.,* 216 F.3d at 593; *Int'l Bhd. of Teamsters, Local Union No. 371 v. Logistics Support Group*, 999 F.2d 227, 230 (7th Cir. 1993).

Thus, when presented with a question of arbitrability, the court will defer to the parties' intent to determine: (1) whether a valid arbitration agreement exists; and (2) whether the scope of the parties' dispute falls within that agreement. *Walton v. Experian*, No. 02 C 5067, 2003 WL 22110788, at *1 (N.D. Ill. Sept. 9, 2003) (citing *AT&T Techs.*, 475 U.S. at 649). Since there are no challenges to the validity of the Agreements (Resp. at 3), the sole issue before this court is whether the Agreements extend to Thomas' claim against American General.

**B.     Scope of the Arbitration Agreements**

American General argues that the Agreements cover "all claims and disputes" between Thomas and American General. (Mem. at 1-2.) It points to a specific section in the Agreements that enumerates the covered claims and disputes. In the Agreements, this section states:

> [Covered claims and disputes include,] but [are] not limited to, all claims and disputes arising out of, in connection with, or relating to:
>
> My loan from Lender today; any previous loan from Lender and any previous retail credit agreement ("Retail Contract") whether open or closed-end, assigned to Lender; all documents, promotions, advertising, actions, or omissions relating to this or any previous loan or Retail Contract made by or assigned to Lender . . . any product or service offered to Lender's customers with any assistance or involvement by Lender; whether the claim or dispute must be arbitrated; the validity and enforceability of this Arbitration Agreement and the Agreement, my understanding of them, or any defenses as to the validity and enforceability of the Agreement and this Arbitration Agreement; any negotiations between Lender and me . . . any allegation of fraud or misrepresentation; any claim based on or arising under any federal, state, or local law, statute, regulation, ordinance, or rule; . . . any claim or dispute based on any alleged tort (wrong), including intentional torts; and any claim for injunctive, declaratory, or equitable relief.

(*Id.*, Ex. A at 3 & Ex. B at 3). American General emphasizes that this section covers claims arising out of "any product or service offered to Lender's customers with any assistance or involvement by Lender" and "any claim based on or arising under any federal, state, or local law, statute, regulation, ordinance, or rule." (Reply at 6 (citing Agreements).) It also focuses on a provision in the Agreements that states "this Arbitration Agreement applies even if my loan has been . . . paid in full." (*Id.*) American General further stresses that Thomas and his wife signed the Agreements, which plainly state in bold capital letters: "THIS AGREEMENT IS SUBJECT TO THE FEDERAL ARBITRATION ACT." (Mem. at 2.) Additionally, Thomas and his wife initialed the arbitration agreements within the Agreements. (*Id.* at 3.)

Thomas does not dispute the validity of the Agreements. He argues, however, that the Agreements do not apply to his claim because he had already repaid the loans and closed the accounts, thereby severing his relationship with American General. (Resp. at 3.)

1. **Arbitration Agreements Are Limited to Their Subject Matter**.

An arbitration agreement is limited to its subject matter. *Am. United Logistics,* 319 F.3d at 929 (holding that the arbitration provision in the tenant lease between the parties was limited only to matters related to the tenant lease and not to separate, unrelated construction contracts); *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 663-664 (7th Cir. 2002) (concluding that the arbitration clause in the employment contract between the parties was limited to disputes relating to the employment contract and did not extend to the separate acquisition agreement between the parties). The subject matter of an arbitration provision "carries its own substantive and temporal terms and limitations." *Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*, 136 F.3d 1156, 1157 (7th Cir. 1998) (limiting arbitration clause in license agreement to disputes concerning payment of license or support fees in the agreement and not to disputes arising from another unrelated contract).

Likewise, the arbitration agreements between American General and Thomas should be limited to the subject matter intended by the parties. The disclaimer on the Agreements stating that the Agreements are subject to the FAA indicates that arbitration is limited to claims arising from the Agreements. The third and fourth pages of the Agreements are arbitration agreements that outline in detail the arbitration rules and procedures. Although American General argues that the arbitration provisions are to be read independently and can extend to claims unrelated to the Agreements, American General does not explain why Thomas and his wife had to agree to

new loan and arbitration agreements every time a new loan or account was opened. Thus, the arbitration agreements between American General and Thomas are limited to their subject matter – the respective loan agreements to which they were attached.

## 2. Claims Must "Arise Out" of the Subject Matter of the Arbitration.

Relying on *Nolde Brothers, Inc. v. Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO*, 430 U.S. 243, 97 S. Ct. 1067 (1977), American General further argues that arbitration agreements can survive even after performance on the underlying contracts has been completed. In *Nolde Brothers, Inc.*, the arbitration provision applied to the employees' claim for severance pay even though the claim arose after termination of the collective bargaining agreement. *Id.* at 249. There, however, the dispute arose out of a severance pay provision also included in the expired collective bargaining agreement. *Id.*

Therefore, although arbitration agreements under expired or terminated contracts may apply to subsequent claims, the claims must still "arise out of or relate to" the subject matter of the arbitration clause. *Kiefer Specialty Flooring,* 174 F.3d at 910 (holding that the arbitration provision in distributorship agreements applied to a tortious interference claim because the claim arose from the relationship designated by those agreements); *Sweet Dreams*, 1 F.3d at 641 (concluding that the arbitration agreement in the joint venture and franchise agreements applied to the franchisee tort claims against alleged franchisor). Specifically, in order for an arbitration provision to cover particular disputes, those disputes must "arise out of" or have their "origin or genesis" in the contract. *Sweet Dreams*, 1 F.3d at 642-643. ("The touchstone of arbitrability in these circumstances is the relationship of the claim to the subject matter of the arbitration clause.").

In this case, the subject matters of the arbitration provisions are the loan transactions. Thomas' complaint, however, arises from the alleged unauthorized access of credit information that is wholly unrelated to the Agreements. Since Thomas' claim does not "arise out of" or have its "origin or genesis" in the loan Agreements, the arbitration provisions do not apply.

3. **The Clauses of an Arbitration Provision Relate to Each Other and Cannot Be Read Independently**.

We find additional support for our conclusion in the Seventh Circuit's *Smith v. Steinkamp* decision. In *Smith v. Steinkamp*, a similar case, Plaintiff Smith signed a loan agreement and an attached arbitration and waiver of jury trial agreement in connection with a loan from Defendant Instant Cash. 318 F.3d 775, 777 (7th Cir. 2003). The arbitration agreement provided that all disputes would be resolved by arbitration. *Id.* at 776. The "disputes" were defined in the arbitration agreement to:

> include, without limitation (a) any federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to the [loan-application form], this Agreement [the loan agreement] (including this arbitration provision), or any prior agreements between you and us; (b) all counterclaims, cross-claims and third party claims; (c) all common law claims, based upon contact, tort, fraud and other intentional torts; (d) any claims based upon a violation of any state or federal constitution, statute, or regulation; (e) all claims asserted by us against you, including claims for money damages to collect any sum we claim you owe us; (f) all claims asserted by you individually, as a private attorney general, as a representative and or member of a class of persons, or in any other Representative capacity, against us and/or any of our employees, agents, [etc.].

*Id.* Instant Cash, like American General, held that the language of the contract dictated that all disputes between the parties must be resolved by arbitration. *Id.* Also, Instant Cash, like American General, insisted that its arbitration agreement covered "any claims based upon a violation of any state or federal constitution, statute, or regulation." *Id.*

-7-

But the Seventh Circuit disagreed with Instant Cash's interpretation of the arbitration clauses and stated that "it is apparent that clauses (b) through (f), including therefore (d), relate back to (a), which limits the duty to arbitrate to disputes arising under 'this Agreement,' that is, the loan agreement, and to disputes arising under 'prior . . . agreements.'" *Id.* at 777. Furthermore, the court indicated that if (b) through (f) were read as standing free from the current or prior loan agreement, "absurd" results would occur. *Id.* For example, the court stated: "if Instant Cash murdered Smith in order to discourage defaults and her survivors brought a wrongful death suit against Instant Cash, Instant Cash could insist that the wrongful death claim be submitted to arbitration." *Id.* The court further hypothesized:

> If an employee of Instant Cash picked Smith's pocket when she came in to pay back the loan, and Smith sued the employee for conversion, he would be entitled to arbitration of her claim. It would make no difference that the conversion had occurred in Smith's home 20 years after her last transaction with Instant Cash.

*Id.* Finally, the court questioned why the agreement explicitly applied to the current and prior loan agreements but contained no reference to subsequent ones. *Id.* The court suggested that such an agreement, requiring borrowers to arbitrate disputes arising out of future agreements, would be unconscionable. *Id*. at 778. Thus, the court held that the waiver agreement did not apply to future disputes, including disputes over future loan agreements. *Id.*

The same reasoning applies here – if each of the clauses in the arbitration agreements is interpreted as standing free from the loan agreements, the same absurd results cited in *Smith* could occur. American General, like Instant Cash, is attempting to have the remaining provisions in the arbitration clauses read independently from the first provisions of the paragraph, which explicitly applies arbitration to the current and prior loan agreements. (Reply at 6.) But as the Seventh Circuit has held, the remaining clauses should be construed as relating

back to the arbitration provision. *Smith*, 318 F.3d at 777. Therefore, the provisions in the arbitration agreements are to be read in relation to each other and do not apply to disputes over future loan agreements or future claims wholly unrelated to the underlying Agreements.

## CONCLUSION

For the reasons discussed above, we deny American General's Motion to Compel Arbitration and Stay Proceedings. It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Dated: March 23, 2009